United States District Court
Southern District of Texas
**ENTERED**
August 01, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| TRACIE MICHELLE COX, § § Plaintiff. § § V. § § COMMISSIONER OF SOCIAL § SECURITY, § § Defendant. § | CIVIL ACTION NO. 3:23-cv-00143 |

## <u>OPINION AND ORDER</u>

Plaintiff Tracie Michelle Cox ("Cox") seeks judicial review of an administrative decision partially denying her applications for disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act (the "Act"), respectively. *See* Dkt. 1 Cox and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner"),[1] have both filed briefs. *See* Dkts. 10, 12. After reviewing the briefing, the record, and the applicable law, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion.

## BACKGROUND

Cox first filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits on September 3, 2018, alleging disability beginning on February 1, 2017. Her applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Cox was not disabled. Cox filed an appeal with the

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review. Cox requested review of the Commissioner's decision and, on October 17, 2022, I issued an opinion and order reversing the Commissioner's decision and remanding for further proceedings. *See Cox v. Comm'r of Soc. Sec.*, No. 3:21-cv-00276, 2022 WL 10146626 (S.D. Tex. Oct. 17, 2022) (Edison, M.J.).

On February 10, 2021, while Cox's appeal before me was pending, she filed subsequent claims for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging disability beginning on March 10, 2020. These applications were denied and denied again upon reconsideration. Cox filed a request for a hearing before an ALJ on May 20, 2022. After I issued my October 17, 2022 opinion and order remanding the case, the Appeals Council vacated the Commissioner's decision and ordered the ALJ to consolidate Cox's first and subsequent applications for benefits, "associate the evidence, and issue a new decision on the consolidated claims." Dkt. 4-1 at 534.

The ALJ held a hearing on February 23, 2023. On March 3, 2023, the ALJ issued a partially favorable decision, finding Cox disabled as of October 17, 2022. The ALJ did not make any meaningful changes to Cox's RFC. Rather, the ALJ found that, under the Medical-Vocational Rules, Cox changed age categories on October 17, 2022. As a result, the ALJ's determination of Cox's RFC, which did not previously warrant a finding of disability, rendered Cox disabled when she turned 50 years old and became a claimant approaching advanced age. Cox did not file written exceptions and the Appeals Council did not review the ALJ's decision on its own. Accordingly, the ALJ's decision became the Commissioner's final decision after 60 days, making it ripe for judicial review. *See* 20 C.F.R. § 416.1484. Cox timely filed the instant request for judicial review on May 9, 2023.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts

2

reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id*. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an

indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id*.

## THE ALJ'S DECISION

The ALJ found at Step 1 that Cox had not engaged in substantial gainful activity since March 10, 2020. *See* Dkt. 4-1 at 496.

The ALJ found at Step 2 that Cox suffers from "the following severe impairments: anxiety/depression, obesity, chronic fatigue syndrome, restless leg syndrome, tachycardia, left shoulder disorder, peripheral neuropathy, and fibromyalgia." *Id*.

At Step 3, the ALJ found that none of these impairments meets or medically equals any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Cox's RFC as follows:

> [Cox] has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [she] can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to unprotected heights. [Cox] can frequently handle and finger, bilaterally. She can frequently reach in all directions, including overhead, with her left upper extremity. She can occasionally push, pull, and operate foot controls, bilaterally. [Cox] can remember and follow simple instructions. She can perform the tasks assigned, not at a production rate pace; however, she can meet the end of day work goals. [Cox] can have occasional contact with coworkers, supervisors, and the general public. She can occasionally adapt to changes in the work place.

*Id*. at 498.

At Step 4, the ALJ found that Cox is unable to perform any past relevant work, and unable to transfer job skills. The ALJ observed that "[p]rior to October 17, 2022," when Cox was between the ages of 45–49, "transferability of job skills, if any, was not material to the determination of disability because using the

4

Medical-Vocational Rules as a framework supports a finding that [Cox] is 'not disabled' whether or not [she] has transferable job skills." *Id.* at 505. On October 17, 2022, however, Cox's "age category changed to an individual closely approaching advanced age," and "considering [Cox]'s age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [Cox] could perform." *Id.* at 505, 507. Accordingly, ALJ found Cox disabled only after October 17, 2022.

## DISCUSSION

This social security appeal raises three issues: (1) whether the ALJ committed harmful error by relying on the wrong alleged onset date; (2) whether the ALJ improperly evaluated the opinions of the consultative examiner, Lowell Adams, Ph.D. ("Dr. Adams"); and (3) whether the ALJ improperly evaluated the opinion of Cox's treating physician, Michael G. Neret, M.D. ("Dr. Neret"). I reach only the first two issues.

The Commissioner concedes that "the ALJ in the current decision apparently used the wrong onset date" of March 10, 2020, as opposed to the correct alleged onset date of February 1, 2017. Dkt. 12 at 4. The Commissioner also concedes that "the file contains a Function Report, Disability Report-Appeals, and medical records dated from March 15, 2017, onward" that the ALJ failed to consider. *Id.* Yet, despite these concessions, the Commissioner contends that Cox "has not demonstrated that these records would have rendered her disabled at an earlier date." *Id.* According to the Commissioner, the fact that "the ALJ considered the persuasiveness" of Dr. Adams's and Dr. Neret's opinions—both of which were dated prior to March 10, 2020, demonstrates that "[a]ny error in the ALJ's assessment of the onset date was harmless at most." *Id.* at 5. I disagree with the Commissioner for the reasons discussed in my first opinion remanding this case.

Because Cox filed for benefits "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. §§ 404.1520c, 416.920c. Through the new regulations, the Commissioner revised the standards and procedures for

5

evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. As such, "ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-cv-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. *See* 20 C.F.R. § 404.1520c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. *Id.* § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id.* § 404.1520c(b)(2).

With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 1:20-cv-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)). "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (quotation omitted).

6

Dr. Adams provided two medical opinions dated February 8, 2019 and June 17, 2021 in connection with Cox's consultative psychological examinations. It was the February 8, 2019 opinion that was at issue in Cox's earlier appeal. In that February 8, 2019 opinion, Dr. Adams observed that Cox's "ability to recall and use working memory to perform work activities appeared to be significantly impaired." Dkt. 4-1 at 431. Second, he observed that "[c]oncentration skills appeared to be a moderate concern." *Id.* at 432. Third, he assessed that "[m]aking work-related decisions, which involve practical/social judgment, would likely be a concern." *Id.* Fourth, he noted that Cox has had "significant difficulties relating to co-workers and supervisors." *Id.* Finally, he noted that Cox's "medical and psychiatric concerns and past behavioral patterns[] will likely affect her ability to regulate emotional responses and adequately control behavior and well[-]being in a work setting." *Id.*

Cox asserts that, even after remand and reconsideration, the ALJ's RFC does not properly account for these restrictions and that the ALJ failed to provide an adequate rationale for rejecting these restrictions. I agree. The following is the only analysis the ALJ provided of Dr. Adams's report:

> The undersigned finds the opinion only slightly persuasive. Although the opinion provides some general parameters regarding [Cox]'s abilities in a work environment, there is not a great degree or specific function by function assessment of [Cox]'s abilities related to work activities as required by the Social Security Administration's regulatory provisions. However, the information was considered in determining [Cox]'s residual functional capacity and it is not inconsistent with the residual functional capacity set forth herein. Accordingly, the evidence available at hearing level is consistent with the residual functional capacity set forth herein.

*Id.* at 504. This is functionally no different than what the ALJ said in her March 9, 2020 opinion:

> I find [the observations noted by Dr. Adams] somewhat persuasive as [they are] consistent with the other evidence of record, but there is not much quantification consistent with the Social Security Administration Regulations and requirements.

> However, [the observations noted by Dr. Adams] do[] support the limitation provided in the assessed residual functional capacity outlined above. The findings in this opinion are consistent with remembering and following simple instructions; can perform the tasks assigned, but not always a production rate pace. However, she can meet the end of the day work goals, can have occasional contact with co-workers, supervisors and the general public, and can occasionally adapt to rapid changes in the workplace.

*Id.* at 613.

Saying that "there is not a great degree or specific function by function assessment," *id.* at 504, is the same as saying that "there is not much quantification." *Id.* at 613. The ALJ still fails to explain how significantly impaired working memory, impaired concentration skills, and a concerning ability to make work-related decisions support the ability to "meet the end of day work goals." *Id.* at 498. "Boiled down to its essence, the ALJ's discussion of Dr. Adams's report equates to nothing more than a conclusory statement that the record supports her finding. The law requires more than that." *Cox*, 2022 WL 10146626, at *4. Thus, I once again find that the ALJ again did not engage in the persuasiveness analysis required by the regulations, which means her decision is unsupported by substantial evidence.[2]

The ALJ failed to consider the correct alleged onset date. The ALJ also failed to properly evaluate Dr. Adams's February 8, 2019 opinion. Because Dr. Adams's February 8, 2019 opinion pertains to a time period before the onset date that the ALJ considered, it is conceivable that—if she had considered the correct alleged onset date and engaged in the proper persuasiveness analysis—her decision would have been different as to the time period between February 1, 2017 (the correct

---

[2] Incredibly, the Commissioner again argues that "Dr. Adams's opinion is also not consistent with [Cox]'s lack of treatment for her mental health impairments." Dkt. 12 at 8; *see also Cox*, 2022 WL 10146626, at *4 n.3. This is indeed an argument the ALJ could have made, but did not. "Coming from the Commissioner on summary judgment, [this is] nothing more than impermissible *post hoc* rationalization[]." *Cox*, 2022 WL 10146626, at *4 n.3 (citing *Chenery Corp.*, 332 U.S. at 196).

alleged onset date) and October 16, 2022 (the day before the date at which the ALJ found that Cox became disabled). Because the ALJ erred in considering the wrong alleged onset date, and because her determination is unsupported by substantial evidence, Cox's substantive rights have been prejudiced. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Thus, this matter must be remanded.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision is **REVERSED** as to only the unfavorable portion of the ALJ's decision from February 1, 2017 through October 16, 2022. This case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion.

SIGNED this 1st day of August 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE